# UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF LOUISIANA

### SHREVEPORT DIVISION

| | |
|---|---|
| **LESLIE DEVONTE CRAWFORD, JR.** **LA. DOC #334015** | **CIVIL ACTION NO. 5:14-cv-3198** |
| **VS.** | **SECTION P** |
| | **JUDGE ELIZABETH E. FOOTE** |
| **CADDO CORRECTIONAL** **CENTER,  ET AL.** | **MAGISTRATE JUDGE KAREN L. HAYES** |

### REPORT AND RECOMMENDATION

Pro se plaintiff Leslie Devonte Crawford, Jr., proceeding in forma pauperis, filed the instant civil rights complaint pursuant to 42 U.S.C. §1983 on November 3, 2014. Plaintiff is a prisoner in the custody of the Caddo Parish Sheriff. He is incarcerated at the Caddo Corrections Center (CCC) where he awaits trial on charges of aggravated incest, incest, molestation of a juvenile and parole violation.[1]  It appears that he is also serving a sentence in the custody of the Department of Corrections.[2]  He complains about "dirty and contaminated" laundry and sues the the Caddo Parish Commission, Sheriff Steve Prator, and Warden Robert Wyche praying only for injunctive relief.  This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. §636. For the following reasons it is recommended that the complaint be **DISMISSED WITH PREJUDICE** as frivolous.

---

[1] See http://www.caddosheriff.org/inmates/?lastNameChar=C

[2] See https://www.vinelink.com/vinelink/searchResultsAction.do?searchType=offender&siteId=19000&lang_value=en&searchWhere=state&doc=19000|900&agency=1&id=334015&lastName=&firstName=&methodToCall=search

*Background*

Plaintiff is, as noted above, both a pre-trial detainee, awaiting trial on pending charges, and, a convict serving time for parole violation.

In his original complaint [Doc. 1] he alleged that CCC corrections officers have on "multiple occasions ... distributed dirty or contaminated laundry that they insist is 'clean'..." He claims that "on more than one occasion" inmates have received T-shirts stained with dried blood, dirt, sweat, hair grease and dead skin; towels and boxer shorts containing pubic hair, feces stains and dried blood; socks with "foot fungus and broken pieces of toenail." He claimed that this contaminated clothing "caused boils and left sores on many inmates..." and, the "socks have also spread foot fungus and athlete's foot." He concluded by blaming this situation on the "community laundry system" employed by the prison.

Plaintiff admitted that inmates are instructed to inspect their laundry while in line, presumably so that dirty or stained items may be exchanged; however, plaintiff complained that the inmates are rushed through the line and are thus unable to inspect their laundry until they arrive back in their cells.

Plaintiff also provided a copy of his Administrative Remedy Request No. G 14100125 dated October 14, 2014. Therein he complained, "The policy of forcing inmates to use body towels and to wear underclothes previously used and worn by multiple inmates is extremely unhealthy and unsanitary. On more than one occasion I have received clothes with blood, dirt, sweat, hair grease, dead skin, pubic hair, foot fungus, toes nails and feces stains."  Plaintiff requested the institution of a laundry bag system and the opportunity to purchase clothing or have it shipped from home.  His grievance was rejected as follows, "All laundry items are

washed before reissue. If you receive clothing that is unserviceable, immediately notify who handed that item so it can be replaced." [Doc. 1-4, pp. 1-2]

In an amended complaint [Doc. 8] he advised that distribution of inmate laundry in his unit takes place every Monday and Thursday at 8:00 a.m. According to plaintiff, he has, on an unspecified number of occasions "received T-shirts with embedded skin in the shoulder and neck stitching, residual sweat and deodorant in the armpit area and dried blood in multiple areas..." He claims that this situation caused him "to have bumps and sores on [his] shoulders and upper back and boils under [his] arms." According to plaintiff, these sores abscess, bleed, and are painful. He complained that he has received boxer shorts with feces stains in the rear and unidentifiable stains in front. He claims this underwear causes jock-itch serious enough to cause bleeding.  He claimed that he has received socks with "footscale and pieces of toenail inside." He claimed this circumstance cause athlete's foot.

Along with his amended complaint, plaintiff provided written statements purportedly made by his fellow inmates which contain complaints about the laundry similar to those advanced by plaintiff.

Plaintiff also provided a copy of the Administrative Remedy Request, No. G 14100247 which was submitted by inmate Donzell J. Samuels complaining about a blood stain on his towel. The prison rejected the grievance noting, "you must check laundry items for damage before you go to your cell. Once it goes to your cell we have no way of knowing when the laundry item was damaged." [Doc. 10, pp. 5-6]

Plaintiff concluded by praying for an injunction directing CCC "... to switch to a laundry bag system and distribute new towels, T-shirts, boxers and socks that can be purchased through

3

[the] commissary account or allow new un-opened items to be shipped from home..."

### Law and Analysis

### 1. Screening

Plaintiff is a prisoner who has been permitted to proceed *in forma pauperis.* As a prisoner seeking redress from an officer or employee of a governmental entity, his complaint is subject to preliminary screening pursuant to 28 U.S.C. § 1915A. *See Martin v. Scott,* 156 F.3d 578, 579-80 (5th Cir.1998) (*per curiam*). Because he is proceeding *in forma pauperis,* his complaint is also subject to screening under § 1915(e)(2).  Both § 1915(e)(2) (B) and § 1915A(b) provide for *sua sponte* dismissal of the complaint, or any portion thereof, if the Court finds it is frivolous or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary relief against a defendant who is immune from such relief.

A complaint is frivolous when it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams,* 490 U.S. 319, 325 (1989). A claim lacks an arguable basis in law when it is "based on an indisputably meritless legal theory." *Id.* at 327. A complaint fails to state a claim upon which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007); *accord Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).

### 2. Conditions of Confinement

Plaintiff complains about the laundry practices at CCC. Such complaints about prison conditions are analyzed under the Eighth Amendment which proscribes cruel and unusual punishment.  While the Eighth Amendment does not prohibit punishment it does prohibit cruel and unusual punishment including the unnecessary and wanton infliction of pain. *See Rhodes v.*

4

*Chapman*, 452 U.S. 337, 347, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981). Additionally, while  the Eighth Amendment does not mandate comfortable prisons, it does not permit inhumane ones. *Harper v. Showers*, 174 F.3d 716, 719 (5th Cir.1999).

Federal courts employ a two-part test to determine whether a prisoner has established an Eighth Amendment violation. *Harper,* 174 F.3d at 719. First, there is an objective requirement that the plaintiff demonstrate conditions "so serious as to deprive prisoners of the minimal measure of life's necessities," as when the prisoner is denied "some basic human need." *Woods v. Edwards*, 51 F.3d 577, 581 (5th Cir.1995); *Farmer v. Brennan*, 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994).  Second, under a subjective standard, it must be shown that the responsible prison officials acted with deliberate indifference to the prisoner's conditions of confinement. *Woods*, 51 F.3d at 581. "The second requirement follows from the principle that only the unnecessary and wanton infliction of pain implicates the Eighth Amendment." *Farmer*, 511 U.S. at 834, 114 S.Ct. 1970 (internal quotation marks and citations omitted) (emphasis added).

"For conditions of confinement to rise to the level of an Eighth Amendment violation, they must be "cruel and unusual" under contemporary standards. *Rhodes v. Chapman*, 452 U.S. 337, 347, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981). To the extent that such conditions are restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society. *Id.* However, when the restrictions of confinement rise to a level that results in physical torture, it can result in pain without penological purpose constituting cruel and unusual punishment under the Eighth Amendment. *Id.*" *Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir. 1998).

5

Plaintiff's complaint simply does not rise to the level of Eighth Amendment violations. Plaintiff and his fellow inmates may be clearly inconvenienced by the condition of their underwear from time to time; however, this inconvenience does not amount to cruel and unusual punishment. To rise to the level of a constitutional violation, the conditions must be " 'so serious as to deprive [plaintiff] of the minimal measure of life's necessities... '"*Alexander v. Tippah County*, 351 F.3d 626, 630 (5th Cir.2003) (quoting *Woods v. Edwards*, 51 F.3d 577, 581 (5th Cir.1995)).

Further, in order to prevail on such a claim, the plaintiff must demonstrate not only that he was exposed to a substantial risk of serious harm, but that he actually suffered some harm that was more than *de minimis*. *See Siglar v. Hightower*, 112 F.3 191, 193-94 (5th Cir.1997); *Alexander  v. Tippah County, Miss*, 351 F.3d at 630-31; *Luong v. Halt*, 979 F.Supp. 481, 486 (N.D.Tex.1997).  Plaintiff has alleged in conclusory fashion that his rashes, bumps, and infections were caused by the manner in which his underwear was, on occasion, laundered. Under the circumstances, the harm suffered was clearly *de minimis*.

Finally, plaintiff seeks injunctive relief – an order directing the CCC to implement a particular scheme for handling inmate laundry. Plaintiff wants this Court to order CCC "... to switch to a laundry bag system and distribute new towels, T-shirts, boxers and socks that can be purchased through [the] commissary account or allow new un-opened items to be shipped from home...".  As noted, this complaint concerns prison conditions; as such, the Prison Litigation Reform Act (PLRA) imposes restrictions on the authority to grant an injunction. The PLRA provides that "[p]rospective relief in any civil action with respect to prison conditions shall extend no further than necessary to correct the violation of the Federal right of a particular

6

plaintiff or plaintiffs." 18 U.S.C. § 3626(a)(1). Thus, the PLRA prohibits an order granting prospective relief or a preliminary injunction unless the court first finds that such relief is: (1) narrowly drawn; (2) extends no further than necessary to correct the harm; and (3) is the least intrusive means necessary to correct that harm. See 18 U.S.C. §§ 3626(a)(1)(A), 3626(a)(2).  The PLRA codifies long standing jurisprudential rules which have recognized that the judiciary is ill equipped to micro-manage a jail's day-to-day operations. Put another way,  federal courts are loathe to intervene when inmates complain of trivial inconveniences. Such judicial restraint is appropriate because the federal constitution simply is not concerned with a *de minimis* level of imposition. The Court should decline plaintiff's invitation to micro-manage the CCC.

Therefore,

**IT IS RECOMMENDED THAT** plaintiff's civil rights complaint be **DISMISSED WITH PREJUDICE** as frivolous in accordance with the provisions of 28 U.S.C. §§ 1915 and 1915A.

Under the provisions of 28 U.S.C. Section 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within fourteen (14) days after being served with a copy of any objections or response to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings**

or the legal conclusions accepted by the District Court, except upon grounds of plain error.

*See, Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir.  1996).

In Chambers, Monroe, Louisiana, April 20, 2015.

_____

**KAREN L. HAYES**
**UNITED STATES MAGISTRATE JUDGE**

8